FILED
2026 Sep-18 PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| CYNTHIA PERRY, *individually and on behalf of all others similarly situated*, | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-00521-CLM |
| v. | ) | |
| ALATRADE FOODS, INC., | ) | |
| Defendant. | ) | |

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MEMORANDUM IN SUPPORT**

Plaintiff, Cynthia Perry, individually and on behalf of all others similarly situated, respectfully moves the Court for final approval of the Settlement in this matter, and hereby submits the following memorandum in support.

Plaintiff's counsel has conferred with counsel for Defendant regarding the relief sought in this Motion. Defendant's counsel does not oppose the requested relief or the filing thereof.

## I. Background

Plaintiff filed a complaint in this matter on April 8, 2025, alleging that Defendant violated the Worker Adjustment and Retraining Notification Act, 29

U.S.C. §§ 2101–2109 (the "WARN Act") by terminating approximately 242 employees without proper notice. ECF No. 1. The complaint sought damages and civil penalties on behalf of a putative class for all employees who were laid off from February through August of 2025 as authorized by the WARN Act. *Id.*, generally. On June 16, 2025, Defendant answered the complaint. ECF No. 10. In so doing, Defendant denied all liability, denied that the action could be maintained as a class, and raised numerous defenses, including the unforeseeable circumstances and faltering company defenses. *Id.* On June 19, 2025, the parties filed a joint motion to stay deadlines in order to engage in mediation. ECF No. 12. Mediation was held on September 17, 2025, and the parties were subsequently able to come to an agreement. Stranch Decl. ¶ 6. The parties filed for preliminary approval of the settlement on December 19, 2025. ECF No. 18. The Court granted preliminary approval on April 7, 2026. ECF No. 19. The parties filed a motion to reschedule the final approval hearing to facilitate the claims process on June 1, 2026. ECF No. 20. The motion was granted on June 11, 2026, and the new hearing date was set for October 2, 2026. ECF No. 21.

## II. <u>The Settlement and Notice</u>

The settlement created a non-reversionary $500,000 settlement fund which will be used to 1) pay settlement class members; 2) pay attorneys' fees and costs as

awarded by the court; 3) pay the general release payment to Plaintiff as awarded by the court; and 4) pay the Settlement Administrator Expenses. *See* ECF No. 18-1, Settlement Agreement, generally.

The allocation from the Net Settlement Fund allowed to each class member will be based on the number of days they were laid off and deducting i) any days worked between any notice of layoff and the actual date of layoff; ii) any days worked upon layoff following recall; and iii) the equivalent days of any severance paid upon layoff. ECF No. 18-1, Settlement Agreement, ⁋ 47.

The notice plan, as approved by this Court, informed class members of the nature of the action, the definition of the settlement class, the settlement class's WARN Act claim, that any class member may enter an appearance through an attorney if desired, that the Court will exclude from the settlement class any member who requests exclusion, the time and manner for requesting exclusion, the binding effect of the settlement on class members, the essential terms of the settlement agreement, information regarding attorneys' fees and costs, the essential terms of the settlement agreement and the method of making distributions, and Plaintiff's Counsel's contact information. ECF No. 18-1, Settlement Agreement, ⁋ 63; Forst Decl., Ex. A, Notice of Class Action Settlement.

After preliminary approval, Counsel for the parties determined the allocation plan and provided it to the Settlement Administrator in accordance with the Settlement Agreement, ¶ 48.

CPT Group, Inc. ("CPT"), the Court-approved Settlement Administrator, received data files from Defendant containing the Settlement Class Members' names, last known addresses, telephone numbers, Social Security numbers, dates of employment, and allocation amounts. Forst Decl. ¶ 4. The mailing list contained 242 Settlement Class Members. *Id.* After conducting a National Change of Address search, CPT mailed the Court-approved Notice Packet by U.S. First-Class Mail to all 242 Settlement Class Members on June 18, 2026. *Id.* ¶¶ 5-6. The deadline to submit Claim Forms, Requests for Exclusion, and Objections was September 16, 2026. *Id.* ¶¶ 4–6. The Postal Service returned 19 Notice Packets, and CPT forwarded 10 directly. *Id.* ¶ 7. For returned packets without a forwarding address, CPT conducted skip tracing through Accurint. *Id.* ¶ 7-8. As a result of forwarding information and skip-trace efforts, CPT re-mailed 27 Notice Packets, and only two remained undeliverable. *Id.* ¶¶ 7–8. By the deadline, CPT received 157 valid Claim Forms, representing a 65% claims rate, and received no Requests for Exclusion and no written objections. *Id.* ¶¶ 9–11. CPT further reports that the claimed settlement amount attributable to the 157 valid claims is $206,634.62. *Id.* ¶ 12. Before employee-side state and federal tax deductions, the average estimated claimed

payment is $1,316.14, the highest is $3,051.57, and the lowest is $5.95. *Id.* ¶¶ 12–13. CPT will charge $17,500.00 for settlement administration, including costs incurred to date and estimated costs to complete administration. *Id.* ¶ 14.

## III. <u>Legal Standard</u>

Settlements are highly favored as a means of resolving disputes. "Compromises of disputed claims are favored by the Courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 585 (1910). This applies particularly to class action suits, whose complexity and expense burden the judicial system and the parties. *See In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[p]articularly in class action suits, there is an overriding public interest in favor of settlement."). The 11th Circuit emphasized that settlement agreements are strongly favored and will be upheld whenever possible because they resolve disputes amicably and avoid time-consuming, costly litigation. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021).

Class action settlements require the Court's approval after the class has received notice of the settlement and is given an opportunity to be heard. *In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448, 456 (E.D. Va. 2023). The trial court has discretion to approve a class action settlement, subject to the requirements of Fed. R. Civ. P. 23(e)(2).

Courts look to whether the settlement was reached through good-faith bargaining, at arm's length, and without collusion. The Rule 23(e)(2) factors for considering when a court should grant final approval of a settlement include: that the class representatives and class counsel have adequately represented the class, that the proposal was negotiated at arm's length, that the relief provided was adequate, and that the proposal treats class members equitably with respect to each other. Fed. R. Civ. P. 23(e)(2); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021)(discussing the court's role in ensuring proposed class action settlements are non-collusive in nature).

Courts have also consistently stressed that in performing the balancing test necessary to weigh the benefits of the settlement against the risk of continued litigation, the District Court "is entitled to rely upon the judgment of experienced counsel for the parties." *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988). In fact, a review of pertinent decisions in this area leads to the conclusion that "[c]ourts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching." *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976).

Finally, in addition to examining the merits of the proposed settlement and ascertaining counsel's views, the court should also consider practical factors such as the complexity of the case and the expense and likely duration of the litigation.

Guided by these overriding principles, and in light of the Rule 23(e)(2) factors for final approval, the 11th Circuit outlined several factors which may be used to determine whether a proposed class action settlement is fair, adequate, and reasonable. *See Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984). These factors are: (a) the likelihood of success at trial; (b) the range of possible recovery; (c) the point at or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (d) the complexity, expense, and duration of the litigation; (e) the substance and amount of opposition to the settlement; and (f) the stage of proceedings at which the settlement is achieved. *Id.* at 987. A review of these standards, guided by the principles described above, fully supports the conclusion that the Settlement should be approved (hereafter referred to as the "*Bennett Factors*").

Since the analysis of Rule 23(e)(2)'s fairness, reasonableness, and adequacy of a settlement are embedded in the *Bennett Factors*, that analysis will be discussed in the following section in conjunction with the *Bennett* analysis. Additionally, those factors are expressly addressed more fully in Plaintiff's Motion for Attorneys' Fees, General Release Payment, and Litigation Costs.

**A. <u>Likelihood of Success</u>**

When evaluating the likelihood of success, courts look to weigh the settlement benefit against the possibility and risk of continued litigation. *Strube v. American*

*Equity Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) ("[T]he Court can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement").

Here, both parties had good reasons to be confident of their likelihood of success. Defendant was an employer for purposes of the WARN Act, and it terminated the requisite number of employees without the required notice. Stranch Decl. ¶ 4. However, Defendant also rehired some employees, others resigned voluntarily, and Defendant had viable statutory defenses based on both the faltering company and unforeseeable circumstances. *Id.* If this matter continued through litigation, there would likely be depositions, dispositive motions, and uncertainty about the outcome for both parties. *Id.* ¶¶ 11–12. The risks of uncertainty associated with continued litigation, combined with the class's recovery, support final approval. Stranch Decl. ¶ 12.

**B. <u>The Range of Possible Recovery Supports Approval.</u>**

As set forth above, the $500,000.00 Settlement Fund represents approximately 30% of the initial estimated damages. Stranch Decl. ¶ 10. That figure is well in excess of previously approved settlements cited above.

This recovery also aligns with and exceeds other approved settlements, including WARN Act recoveries. *See, e.g., Philips v. Muchnery Inc.*, No. 19-cv-00469-JSC, 2020 WL 6135996, at *7 (N.D. Cal. Oct. 19, 2020) (approving WARN

settlement achieving 26% of total recovery); *Farrar v. Workhorse Grp., Inc.*, CV 21-02072-CJC (PVCx), 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving settlement where recovery represented 3% of estimated damages); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (observing that courts frequently approve settlements when the settlement amount is a small fraction of what the class could recover at trial).

### C. <u>The Complexity and Duration of Litigation Support Approval</u>

The complexity and stage of the litigation also support approval of the Settlement. The Court considered this factor when the settlement was reached. *Ponzio v. Pinon*, 87 F.4th 487, 506 (11th Cir. 2023). In *Ponzio*, the court evaluated the status of the pending claims at the time of settlement, and the likelihood of success on the remaining claims. *Id*.

Because of the case's complexity, any future proceedings would have been costly and time-consuming. Stranch Decl. ¶ 11. At the time of settlement, Plaintiff's WARN Act claims were still pending in addition to Defendant's denial that the matter could be maintained as a class and their pled defenses of faltering company and unforeseeable circumstances. *Id*. These defenses would have required additional discovery and depositions into Defendant's financial status at the time of the layoffs, Defendant's efforts to seek additional capital, and dispositive motions on those

issues. *Id*. These efforts would likely include expert witnesses for both parties. These costs would likely have reduced any ultimate recovery for the Class. *Id*. Avoiding these costs clearly benefits the Class.

Further, if the Settlement were not approved, future proceedings would have included not only trial but appeals. Stranch Decl. ¶ 11. In contrast, the Settlement provides definite, immediate benefits without waiting additional years. *Id*. ¶ 12. Based on that thorough investigation and research, Class Counsel determined that the Settlement is fair, reasonable, and in the best interests of the Class. *Id*.

**D. <u>The Lack of Opposition Supports Approval</u>**

The reaction of the Class strongly favors approval. CPT mailed the Court-approved Notice Packet to all 242 Settlement Class Members on June 18, 2026. Forst Decl. ¶ 6. Nineteen packets were returned, and ten were forwarded by the Postal Service. *Id*. ¶ 7. CPT used Accurint skip tracing for returned packets lacking forwarding addresses and ultimately re-mailed 27 Notice Packets. *Id*. ¶ 7. Only two Notice Packets remained undeliverable. *Id*. ¶¶ 4, 6–8. The September 16, 2026, deadline passed with no written objections and no Requests for Exclusion. *Id*. ¶¶ 9–10. CPT received 157 valid Claim Forms, representing a 65% claims rate. *Id*. ¶ 11. Those valid claims account for $206,634.62 in settlement payments, with an estimated average claimed payment of $1,316.14 before employee-side taxes. *Id*. ¶¶

12–13. The absence of objections and exclusions, together with substantial Class participation, supports final approval. Stranch Decl. ¶ 17.

Additionally, the claim filing rate is above average when compared to class settlements in other recent class-action cases. A 2026 study found that claims rates for approved class action settlements in Securities litigation were often around 44% of the class, with an average of 52%. https://www.cornerstone.com/insights/articles/approved-claims-rates-in-securities-class-actions/. While there is no fixed threshold for an acceptable claims rate, the substantial participation of the Settlement Class is relevant to the Court's assessment of the Settlement under Rule 23(e)(2) and the Bennett factors. See *Drazen v. Pinto*, 101 F.4th 1223, 1255–56, 1261–62 (11th Cir. 2024); *Bennett*, 737 F.2d at 986. While limited data on claims rates in WARN Act matters is available, analysis of claims rates in other areas of law is nonetheless instructive. By comparison, the high claims rate in this matter indicates the substantial support this settlement has among class members.

Notably, the Settlement Agreement also establishes a process for the disposition of any unclaimed funds. After settlement payments are distributed to participating Settlement Class Members pursuant to the agreed-upon Allocation Plan, any portion of the Net Settlement Fund that remains unclaimed will first be used to reimburse Defendant for settlement administration costs and mediation costs.

ECF 18-1, Settlement Agreement ¶¶ 47–48, 51. Any additional unclaimed balance remaining after those reimbursements will be distributed, subject to Court approval, as a *cy pres* award to one or more tax-exempt charitable organizations selected by Defendant. *Id.* ¶ 51. The Agreement further requires Defendant to disclose its proposed *cy pres* recipient or recipients to Plaintiff's Counsel and the Court before final approval. *Id.* Thus, the Settlement Agreement expressly provides for the disposition of any unclaimed funds rather than permitting an undisclosed residual balance to remain in the Settlement Fund.

### **E. The Stage at Which this Settlement was Reached Supports Approval**

The stage of the proceedings also supports approval. The relevant inquiry is whether counsel possessed sufficient information to evaluate the merits and risks of the case, not whether the parties completed extensive formal discovery. *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

Here, the Parties exchanged payroll and damages information sufficient to evaluate Plaintiff's WARN Act claims, potential damages, and Defendant's asserted defenses before settlement. Stranch Decl. ¶¶ 4–5. The Parties then mediated with experienced neutral A. Lee Parks, Jr. and reached the Settlement only after continued arm's-length negotiations. *Id.* ¶¶ 6-7. Thus, Class Counsel had sufficient information

to meaningfully weigh the $500,000 Settlement against the risks, costs, and delay of continued litigation. *Id.* ¶¶ 10-12. Accordingly, this factor favors final approval.

**F. No Collusion Exists**

Courts do seek to ensure a settlement agreement is free of collusion before granting final approval. Courts must ensure that a class settlement is not the product of collusion. See *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147–48 (11th Cir. 1983).

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). When, as here, a settlement was reached through arm's-length negotiations, there is no evidence of fraud or collusion. *See, e.g., Sheick v. Auto. Component Carrier, LLC*, No. 09–14429, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

Here, the Parties exchanged payroll and damages information sufficient to evaluate the claims and defenses before settlement. Stranch Decl. ¶ 5. The Parties negotiated the Settlement with the assistance of respected Neutral A. Lee Parks, Jr., and reached it only after continued arm's-length negotiations following mediation. *Id.* ¶¶ 6-7. The parties negotiated the material economic terms of the Settlement before addressing attorneys' fees. *Id.* ¶ 7. The $500,000.00 Settlement Fund

represents approximately 30% of the initial estimated damages. *Id.* ¶ 10. These facts support the conclusion that the Settlement was not collusive. Stranch Decl. ¶ 5-7.

## IV. Conclusion

For the reasons discussed above, and for those described in the previously filed Motion for Preliminary Approval and Plaintiff's Motion for Attorneys' Fees, General Release Payment, and Litigation Costs, Plaintiff respectfully requests that the Court enter the proposed Final Approval Order.

Dated: September 18, 2026

Respectfully submitted,

*Hirlye R. Lutz*
Hirlye R. "Ryan" Lutz, III (ASB-6641-E59L)
F. Jerome Tapley (ASB-0583-A56T)
Hunter Phares (ASB-5406-G38V)
**CORY WATSON, P.C.**
2131 Magnolia Avenue South
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896
jtapley@corywatson.com
rlutz@corywatson.com
hphares@corywatson.com

J. Gerard Stranch, IV (Pro Hac Vice)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com

Samuel J. Strauss
Raina C. Borrelli
**STRAUSS BORRELLI, PLLC**
980 North Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops (Pro Hac Vice)
Ian R. Bensberg (Pro Hac Vice)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com

*Counsel for Plaintiff and the Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of September, 2026, I filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users, including counsel for Defendant.

*Hirlye R. Lutz*
Hirlye R. Lutz, III